UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SIDOTI,<br><br>                               Plaintiff,<br><br>vs.<br><br>R. SOLIS; SHEPARD; DANIEL PARAMO; DOES 1-10,<br><br>                             Defendants. | Case No.: 3:19-cv-01028-GPC-NLS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND VACATING HEARING DATE**<br><br>**[ECF No. 27]** |

      On March 30, 2020, Defendants Correctional Officers A. Shepherd and R. Solis filed a Motion for Summary Judgment. ECF No. 27 ("Mot."). The Defendants' motion claimed that Plaintiff James Sidoti ("Plaintiff" or "Sidoti") failed to exhaust available administrative remedies as to Counts One and Two of the Complaint. Further, Officer Shepard attacked the sufficiency of the facts relating to Count Two which alleges deliberate indifference to medical needs and raised qualified immunity as a defense to the count. Plaintiff filed an opposition on July 17, 2020. ECF No. 38. On July 22, 2020, the Court granted the parties' joint motion to dismiss Officer A. Shepherd from the case which renders MOOT his motion for summary judgment on Count Two. ECF No. 39. Defendant Solis filed a reply on August 7, 2020. ECF No. 41. Based on review of the factual record, the Court hereby **DENIES** Defendant Solis' Motion for Summary Judgment and **VACATES** the August 21, 2020 hearing date set for this matter.

# BACKGROUND

Plaintiff, currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), California, and represented by counsel, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, claiming various prison officials at Richard J. Donovan Correctional Facility ("RJD") violated his Eighth Amendment rights. ECF No. 1 ("Compl."). The Complaint alleged claims for (1) violation of 42 U.S.C. § 1983 for excessive force against Officer Solis; (2) violation of 42 U.S.C. § 1983 for deliberate indifference to serious medical needs against Officers Solis and Shepard; and (3) supervisory liability under 42 U.S.C. § 1983 against Warden Paramo.

The Complaint alleges that, on June 2, 2017, Sidoti attended a medical appointment while incarcerated at RJD. Compl. ¶ 1. Sidoti attended the medical appointment in order to address his broken right hand. *Id.* ¶ 8. Sidoti has a mobility impairment and uses a wheelchair. *Id.* ¶ 9. Upon arriving at the medical appointment, Sidoti sat in his wheelchair while Officer Solis spoke with the medical staff. *Id.* ¶ 10. Solis then began pushing Sidoti's wheelchair, informing Sidoti that he would be seen by the medical staff on another day. *Id.* Sidoti applied the brakes on the wheelchair and Solis kept pushing the wheelchair forward. *Id.* ¶ 12. Sidoti tilted forward out of the chair and then rose to his feet. *Id.* ¶ 13. Plaintiff alleges that he attempted to speak with the medical staff regarding his appointment, and that Solis subsequently "viciously slammed [Plaintiff] to the ground and kneed him in his head numerous times." *Id.* ¶ 15.

Officers Solis and Shepard then escorted Plaintiff while holding his arms as he walked for about 75 yards to an administrative segregation ("ad-seg") cell, despite Plaintiff's request for a wheelchair. *Id.* ¶¶ 18, 20; ECF No. 38-5 (Plaintiff's Response to Defendant's Separate Statement of Undisputed Facts, "SSUF") ¶¶ 1, 3. Plaintiff can only walk short distances. SSUF ¶ 2.

Plaintiff was placed in a holding cell where he was medically evaluated and under constant supervision. *Id.* ¶¶ 4, 5. At the time, Plaintiff complained of pain in his head and bruises on his back and legs. *Id.* ¶ 7.

Plaintiff alleges that Officer Solis wrote a false report about Plaintiff's attempt to assault him and as a result of this report, Plaintiff was placed in ad-seg for five days without any opportunity to speak with a medical provider.  Compl. ¶¶ 21, 24.  During this period, Plaintiff felt "brain fog and faintness."  *Id.* ¶ 23.  After five days in ad-seg, Plaintiff saw a doctor who sent Plaintiff to an outside hospital.  *Id.* ¶ 25.  Upon examination at the outside hospital, Plaintiff's hand was confirmed broken and his brain was found to be bleeding due to Officer Solis's knee strikes to Plaintiff's head.  *Id.* ¶ 26. Plaintiff was placed in a two-week medically-induced coma.  *Id.* ¶ 27.  Afterwards, Plaintiff was returned to prison and placed in ad-seg, and after a period of time, returned to a non-segregation unit.  *Id.* ¶¶ 28-29.

### A.     Appeals Process

Plaintiff is required to exhaust his administrative remedies before bringing suit. SSUF ¶ 11.  The California Code of Regulations, title 15 ("15 CCR") § 3084.1(a) provides: "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy, which they can demonstrate as having an adverse effect upon their welfare." [1]

All inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Chief of Appeals of the Office of Appeals ("OOA").  15 CCR §§ 3084.1(b), 3084.7(a)-(d).

Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each of the three levels of review within 30 calendar days of the

---

[1] Sections of California Code of Regulations, title 15, including 15 CCR § 3084.8, were repealed per April 3, 2020 Emergency Regulations, effective June 1, 2020.  2020 CA REG TEXT 551506 (NS), 2020 CA REG TEXT 551506 (NS).  All references to the California Code of Regulations in this order are made to the version current through December 27, 2019 accessible via Register 2019.

occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal.  15 CCR §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b).  When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits.  15 CCR §§ 3084.6(a)-(c), 3084.8(c)-(e).  If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects.  15 CCR §§ 3084.5(b)(3), 3084.6(a)(1).  If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision.  15 CCR § 3084.6(a)(3) & (e).

### 1.     First Level of Appeal for RJD-17-03297

On June 29, 2017, Plaintiff filed a Request for Interview, Item, or Service ("Inmate/Parolee Request" or "Form 22") regarding Officer Solis' excessive force. Spaich Decl., Ex. 2 at 52.

On July 3, 2017, the Inmate Appeals Office at RJD received the Form 22 as an attachment to an Inmate/Parolee Appeal Form ("CDCR 602").  Spaich Decl., Ex. 2 at 50.; ECF No. 27-6 ("Frijas Decl.") ¶6(a), Ex. 3 at 10-12.[2]  In the Form 22, Sidoti stated that he "would [like] to make a complaint against staff for use of excessive force. Specifically on 6/02/17, I was constantly kneed in the head by Officer Solis" at the clinic and was "consequently hospitalized with severe brain trauma and was diagnosed as having a cerebral hemorrhage.  The use of force by Officer Solis was excessive and brutal."  Frijas Decl., Ex. 3 at 12.  Plaintiff did not include a CRCR Form 1858 ("Rights and Responsibility Statement" or "R&R") with this submission.  SSUF ¶ 9.  This grievance was assigned log number RJD-17-03297.  Frijas Decl. ¶ 6(a).

---

[2] Page references to exhibits refer to Bates page numbering.  All other page references refer to the CM/ECF pagination.

### 2. Second Level of Appeal for RJD-17-03297

Prison officials had 30 working days to respond to this appeal per 15 CCR §§ 084.8(c) and (e). On September 4, 2017, an Appeal Inquiry was conducted. Frijas Decl., Ex. 3 at 9. On September 8, 2017, the hiring authority considered Sidoti's allegations that Officer Solis used excessive force and that Officer Solis kneed Sidoti in the head and found that the staff did not violate CDCR policy. Frijas Decl., Ex. 3 at 10.

Plaintiff received this second-level response sometime between September 4, 2017 and September 30, 2017. Sidoti Decl. ¶ 10; ECF No. 40-1 ¶¶ 3, 4. In this second-level response, Sidoti was advised that in order to exhaust his administrative remedies, he must submit his staff complaint through all levels of appeal up to and including the third level of appeal. Frijas Decl. ¶6(a); Ex. 3 at 9.

### 3. Third Level of Appeal for RJD-17-03297

On September 30, 2017, Plaintiff submitted his appeal to the third level of review. Sidoti Decl. ¶ 10; ECF No. 40-1 ¶¶ 3, 4. On October 6, 2017, the OOA received Sidoti's appeal to the third level. Spaich Decl. ¶9, Ex. 2 at 17.41.) On November 29, 2017, the Office of Appeals ("OOA") rejected, or "screened out," Sidoti's appeal because Sidoti failed to submit a R&R. Spaich Decl. ¶ 9, Ex. 2 at 39. This rejection was mailed to Plaintiff on December 4, 2017. Spaich Decl., Ex. 2 at 15. On or after December 4, 2017, Sidoti received this screen-out decision from the third level stating that he was missing this R&R Statement. Sidoti Decl. ¶ 12.

### 4. Plaintiff's Submission of the R&R Statement

In late December or early January, Sidoti approached another inmate, Ernest Holestine, about acquiring a R&R Statement. Sidoti Decl. ¶ 14. In September 2017, Holestine had been assigned by RJD prison staff to work as an inmate assistant to help inmates with disabilities to fill out and submit their inmate appeals forms. Holestine Decl. ¶ 4. In January 2018, Holestine obtained a R&R Statement for Sidoti and Sidoti sent a "corrected appeal" which included this R&R Statement "shortly after." Sidoti Decl. ¶ 15. The envelope with this corrected appeal is postmarked January 9, 2018.

Sidoti Decl. ¶ 16.  Sidoti claims that he gave this envelope to officials "days before" January 9, 2018.  *Id.*  The OOA received this envelope on January 12, 2018.  Spaich Decl., Ex. 2 at 15, 29.

### 5. Appeal Cancellation

On February 8, 2018, the Office of Appeals canceled Sidoti's appeal on the basis that it was untimely since it was not submitted within 30 calendar days of the date of its rejection.  Spaich Decl. ¶ 9.  On April 22, 2018, Plaintiff submitted an appeal of the cancellation of Appeal Log RJD-17-03297.  Spaich Decl., Ex. 2 at 11.  On May 2, 2018, the OOA received Plaintiff's submission.

On June 6, 2018, the OOA screened out Plaintiff's attempt to appeal the cancellation since Plaintiff failed to correct and return the rejected appeal within 30 calendar days of the rejection.  Spaich Decl. ¶ 9, Ex. 2 at 10.  The June 6, 2018 letter from the OOA states that the "[t]ime constraints begin from the date on the screen out form which cancelled your appeal."  *Id.*

As a result, Sidoti's appeal of the cancellation was also cancelled as untimely. (Spaich Decl. ¶9, Ex. 2 at 10.)

### 6. Other Appeals

On July 14, 2017, Sidoti submitted another appeal alleging misuse of force by Officer Solis, and this was assigned log number RJD-D-17-03297.  Frijas Decl. ¶ 7(a).  The appeal was screened as duplicative of Appeal Log No. RJD-17-03297.  *Id.*

On June 25, 2018, the Office of Appeals received an undated appeal from Sidoti, again claiming Solis used excessive force, and this was assigned log number RJD-C-18-3906.  Frijas Decl. ¶ 7(b); Ex. 5 at 22-24.  The appeal was screened as duplicative of Appeal Log No. RJD-17-03297.  Frijas Decl. ¶ 7(b); Ex. 5 at 21.

Other than these three appeals, Sidoti has not filed any appeals related to the allegations in his Complaint.  Frijas Decl. ¶ 8.

/ / /

/ / /

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

On a motion for summary judgment on the issue of exhaustion, the moving party bears the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

Once the defendant has met its burden, the prisoner has the burden of production and "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996) (the "burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.")). Ultimately, the defendant bears the burden of proof. *Id.* For purposes of summary judgment, a court must "view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." *Id.* at 1173 (citing *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009)).

A court will grant summary judgment under Rule 56 "if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Albino*, 747 F.3d at 1166. The court must deny summary judgment "if material facts are

disputed," but the district judge, rather than a jury, will determine the facts pertaining to exhaustion. *Id*.

## BACKGROUND

### I. Administrative Exhaustion

Defendants argue that Sidoti's appeal against Officer Solis has not met the administrative exhaustion requirement since he failed to submit the Rights and Responsibility Statement ("R&R") within the applicable time limit after his appeal was screened out at the third-level of review. ECF No. 27 at 19-20; Spaich Decl. ¶ 9. Plaintiff counters that the grievance process—including access to the R&R form—was rendered unavailable and therefore, Plaintiff should be excused from meeting the exhaustion requirement.

### A. Legal Standard

Disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation before reaching the merits of a prisoner's claim. *Albino*, 747 F.3d 1162, 1170-1171 (9th Cir. 2014). If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits. *Id.*

The Prison Litigation Reform Act ("PLRA") mandates that inmates exhaust all available administrative remedies before filing "any suit challenging prison conditions," including, but not limited to, suits under § 1983. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). An inmate is required to exhaust only *available* remedies. *Booth,* 532 U.S. at 736, 121 S.Ct. 1819; *Brown v. Valoff,* 422 F.3d 926, 936–37 (9th Cir.2005). To be available, a remedy must be available "as a practical matter"; it must be "capable of use; at hand." *Id.* at

937 (quoting *Brown v. Croak,* 312 F.3d 109, 113 (3d Cir. 2002)).  The Supreme Court has recognized three contexts in which an administrative procedure is "unavailable": (1) "when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.,* some mechanism exists to provide relief, but no ordinary prisoner can navigate it"; and (3) "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1853–54 (2016).

The Ninth Circuit has held that a plaintiff's failure to timely exhaust was excused because the prisoner took reasonable and appropriate steps to exhaust and was prevented from exhaustion by the Warden's mistake, and not through his own fault. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (excusing failure to exhaust because Warden responded with an incorrect citation and inmate spent many unsuccessful attempts to obtain the regulation).  The Ninth Circuit has also noted that a prisoner may be excused from exhausting administrative remedies if prison officials improperly screen out inmate grievances.  *Sapp v. Kimbrell*, 623 F.3d 813, 824, 826 (9th Cir. 2010) ("[E]xhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable.").

**B.    Analysis**

    **i.    Submission of R&R in Corrected Appeal**

15 CCR § 3084.6(a)(2) provides that an appeal that is rejected may later be accepted if the correction is made and the appeal is returned to the appeals coordinator "within 30 calendar days of rejection."  15 CCR § 3084.6(a)(5) provides, "Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal."  The Ninth Circuit has previously stated that an inmate's lack of access to the necessary forms and

inability to complete them can qualify as an exception to the timely filing requirement. *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009).

On December 4, 2017, the OOA mailed the screen-out to Plaintiff, rejecting Plaintiff's appeal due to his failure to include the R&R. Spaich Decl., Ex. 2 at 24. Sometime after December 4, 2017, Plaintiff received the screen-out and Plaintiff then asked Holestine about how to acquire the R&R form in "late December or early January." Sidoti Decl. ¶ 14. Holestine then helped Plaintiff acquire the R&R form. Sidoti Decl. ¶ 12. Plaintiff then sent the corrected appeal, which included the R&R, and the envelope containing the corrected appeal was post-marked on January 3, 2018. Spaich Decl., Ex. 2 at 37.

Defendants argue that the OOA properly screened out Sidoti's corrected appeal submission because he failed to submit it within 30 calendar days of the rejection. Plaintiff counters that the process of obtaining R&R Statement was effectively "unavailable" due to the "machinations and difficulties instituted by the prison staff" and Plaintiff should therefore be excused from meeting this requirement. ECF No. 38 at 19.

Plaintiff alleges that obtaining the R&R was more difficult than obtaining other grievance forms since the form was not available in the RJD housing units. ECF No. 38 at 9; Holestine Decl. ¶ 6. The R&R form was only available in the Law Library and in order for inmates to acquire access to the Law Library, inmates were required to undergo a process that took several weeks: inmates were first required to sign up for Law Library access through institutional mail, wait to be scheduled for an appointment, and then wait to be escorted to the Law Library. ECF No. 38 at 9; Holestine Decl. ¶ 6. Only upon entering the Law Library could inmates request the R&R form from the Law Library staff. ECF No. 38 at 9; Holestine Decl. ¶ 6. Further, Plaintiff argues he faced an additional challenge since RJD prison officials did not explain these steps to inmates, and inmates were instead required to learn about this process through word of mouth from other inmates. *Id.*

1 | Defendants counter that throughout 2017 and 2018, it was not necessary to make an appointment for time in order to obtain a R&R form from the Law Library, and that inmates could stop by the Law Library to pick up the R&R form or alternatively, inmates could request the R&R Form using the CDCR Form 22 process. ECF No. 41-2 ("Blahnik Decl.") ¶ 2. If an inmate used the CDCR Form 22 process, the prison staff were required to reply within three business days. *Id.*

On a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Albino*, 747 F.3d at 1172. Viewing the aforementioned evidence in the light most favorable to Sidoti, the Court finds that there is a genuine issue of material fact as to the process that inmates were required to follow in order to obtain a R&R Form and the degree to which the R&R form was made accessible through the Law Library. Due to this issue of material fact, the Court finds that a jury is better positioned to make factual determinations and accordingly **DENIES** Defendants' motion for summary judgment on exhaustion.

### ii. Timeliness of Submission of Corrected Appeal

An appeal must be corrected within 30 calendar days of the rejection, regardless of when the inmate received it, *see* 15 CCR § 3084.6(c)(10), and cancelation of an appeal may be imposed only if "the inmate or parolee had the opportunity to submit within the prescribed time constraints." 15 CCR § 3084.6(c)(4).

Plaintiff argues that he should be excused from this timeliness requirement. Plaintiff alleges that although the screen-out decision was made on November 29, 2017, it was not mailed out until December 4, 2017, and Plaintiff did not receive the decision until several days after December 4, 2017, though the exact date of receipt is not known. ECF No. 38 at 29. Further, although Plaintiff does not dispute that the envelope containing his corrected appeal is postmarked for January 9, 2018, Plaintiff claims he gave the corrected appeal to the jail staff "some time" before January 9, 2018, but the jail staff failed to date the envelope indicating the date when they received it. Sidoti Decl. ¶ 16. On this basis, Plaintiff argues that there exists a reasonable dispute of material fact

exists as to the dates when Plaintiff received the screen-out and when Plaintiff gave the correction to officers for mailing.

Defendant counters that the Court should presume that Sidoti received the screen-out decision three days after its mailing—*i.e.*, on December 7, 2017—based on the rebuttable presumption that mail sent within the contiguous United States arrives at its intended destination within three days, citing *Dandino, Inc. v. U.S. Dep't of Transp.*, 729 F.3d 917, 921 (9th Cir. 2013), and that Plaintiff does not offer any rebuttal to dispute this. ECF No. 41 at 4.  Therefore, since Plaintiff submitted his corrected appeal on January 9, 2018—more than 30 calendar days after his rejection—Defendant argues that his appeal was therefore properly canceled.

First, the Court notes that *Dandino* applied to "first class mail" sent through the United States Postal Service.  Defendants have not shown that the screen-out decision was delivered through United States Postal Service first class mail.  Second, the Court notes that *Dandino* involved mail delivery between a civil plaintiff and a federal agency and did not involve the delivery of mail within the prison system.  The Supreme Court has previously noted that when analyzing the timeliness of submissions, distinct approaches are appropriate for cases involving civil appeals and cases involving prisoners' appeals.  *See, e.g., Houston v. Lack*, 487 U.S. 266, 274 (1988) (relying on the date that *pro se* prisoner gave notice of appeal to prison authorities, rather than the date of receipt since the latter method "raises such difficult to resolve questions as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped 'filed' on one date was actually received earlier.").  Accordingly, the Court finds that a genuine issue of material fact exists as to the date of receipt of the screen-out decision and the date of delivery of the corrected appeal.[3]

---

[3] Plaintiff additionally argues that administrative remedies were rendered unavailable based on (1) erroneous directions from the Law Library; (2) the prison staff's failure to interview witnesses as part of their investigation of the prisoner's appeal; (3) intimidation based on regular beatings of inmates in Plaintiff's housing unit; (4) Plaintiff's physical and mental disabilities.  Since the Court has denied

## CONCLUSION

For the foregoing reasons, Officer Solis' motion for summary judgment on the Count One is DENIED and Officer Shepard's motion for summary judgment on Count Two is DENIED as MOOT.

**IT IS SO ORDERED**.

Dated:  August 18, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

Defendants' motion for summary judgment on the issue of exhaustion for the reasons outlined above, the Court declines to address these additional arguments.